The Honorable Steve Bell State Senator 500 East Main, Suite 208 Batesville, Arkansas 72503
Dear Senator Bell:
This is in response to your request for an opinion, on behalf of Mr. Stanley Montgomery, City Attorney for Newport, concerning an appointment to the Newport Civil Service Commission. In correspondence attached to your request, Mr. Montgomery sets forth the factual basis for this request as follows:
 Steven G. Howard, a local attorney, has agreed to accept an appointment to the Newport Civil Service Commission. However, Mr. Howard serves as the Municipal Judge for the City of Tuckerman, Arkansas, a position to which he is employed pursuant to A.C.A. 16-17-105(a), and is not elected. Furthermore, Mr. Howard is designated, pursuant to A.C.A. 16-18-112(b) to serve as the judge of the City Court of Swifton, Arkansas. Neither of these courts has county wide jurisdiction.[1]
With regard to foregoing set of facts, Mr. Montgomery has asked for an opinion on the following question:
 In light of A.C.A. 14-51-202(b)(1) (2), is a person who is otherwise qualified barred from serving on a civil service commission of one city when he is employed as a municipal judge and/or city court judge in another city within the same county?[2]
With regard to Mr. Montgomery's question, it is my opinion that A.C.A. 14-51-202(b)(2) in all likelihood precludes Mr. Howard's appointment to the Newport Civil Service Commission.
Arkansas Code Annotated 14-51-202(b)(1) (2) (Cum. Supp. 1993), the provisions referenced in Mr. Montgomery's question, provide:
 (b)(1) No person on the commission shall hold, or be a candidate for, any political office under any national, state, county, or municipal government or be connected in any way in any official capacity with any political party or political organization.[3]
 (2) No person as enumerated in this subsection shall be eligible as a member of the board who at the time of his election shall hold any office.
As the individual referred to in Mr. Montgomery's correspondence is not currently a member of the commission, but rather is under consideration for appointment, subparagraph (b)(2) of the foregoing statute is the relevant provision (although it must be interpreted in light of subparagraph (b)(1)). While this provision is phrased somewhat unclearly (such as use of the term "any office" at the end of the sentence), thus creating a problem with respect to statutory construction, it is my opinion that subparagraph (b)(2) of A.C.A. 14-51-202 prohibits the following persons from being appointed to serve on a civil service commission which has been created under A.C.A. 14-51-101 et seq.: (1) persons, who at the time they are being considered for appointment to the commission, either hold or are candidates for any political office under any national, state, county, or municipal government, and (2) persons who, at the time they are being considered for appointment to the commission, are connected in any way in any official capacity with any political party or political organization. This interpretation is based on the introductory language in subparagraph (b)(2), "[n]o person as enumerated in this subsection," which would appear to refer to those classes of persons designated in subparagraph (b)(1), and on other similar provisions located elsewhere in the Arkansas Code.[4] Thus, the relevant inquiry with respect to the individual described in Mr. Montgomery's correspondence is whether he falls into either of these categories.
As there is no indication that the person being considered for appointment serves in any official capacity with any political party or organization, our emphasis must turn to the first category described above. In this regard, it is necessary to make two inquiries: (1) whether either of the positions held by Mr. Howard (Tuckerman Municipal Court Judge and Swifton City Court Judge) would constitute an "office" under any national, state, county, or municipal government, and if so, (2) whether either "office" would be considered a "political office" for purposes of A.C.A. 14-51-202(b)(1) (2). As to the first of these inquiries, it is my opinion that municipal and city judgeships are clearly "offices" and fall within the scope of the designated levels of government; the relevant aspect of the first inquiry is, however, whether Mr. Howard, in effect, holds either of these "offices." In my opinion, it may be successfully contended that Mr. Howard holds the office of Tuckerman Municipal Judge despite the fact that he is employed in that position pursuant to A.C.A. 16-17-105(a), rather than elected to serve in that capacity.
As A.C.A. 14-51-202(b)(2) is almost identical to subparagraph (b) above, thus perhaps suggesting the General Assembly intended to track the language utilized in 14-49-202, it is my opinion that the term "any office" at the end of14-51-202(b)(2) should be interpreted to mean "any such office," which would refer to the offices outlined in14-51-202(b)(1). See also A.C.A. 14-50-202(b) (1987) (applicable to civil service commissions for nonuniformed employees in first class cities with population of 20,000 to 75,000 and providing:
 (b)(1) No person on the commission shall hold or be a candidate for any political office under any national, state, county, or municipal government, or be connected in any official capacity with any political party or organization.
 (2) No person who is a candidate for or holds any office or position described in this subsection shall be eligible to serve as a member of the commission.
This determination is based on Op. Att'y Gen. 92-352, wherein this office concluded that one employed as municipal judge under 16-17-105(a) would "undoubtedly hold the office in any event." Op. Att'y Gen. No. 92-352 at 3.[5] Thus, it only remains to be considered whether the Tuckerman Municipal Judgeship would be considered a "political office" for purposes of A.C.A. 14-51-202.
As A.C.A. 14-51-202 contains no definitional section and as I find no Arkansas case law that would be helpful in construing this provision, it is necessary to turn to the general rules of statutory construction in order to ascertain what is meant by a "political office" within the context of 14-51-202. The first rule in considering the meaning of A.C.A. 14-51-202 or any other statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. McCoy v. Walker, 317 Ark. 86, 876 S.W.2d 252 (1994). The basic rule of statutory construction to which all other interpretive guides defer is to give effect to the intent of the legislature. Id. In interpreting a statute and attempting to construe legislative intent, one looks to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, legislative history, and other appropriate means that throw light on the subject. Id.
In accordance with the foregoing precepts, we must first try to interpret A.C.A. 14-51-202 by giving the words used therein their ordinary and usually accepted meaning in common language. While it is difficult to determine how broadly the General Assembly intended for the term "political office," as appears in 14-51-202, to be construed, it is my opinion that the term would commonly be understood to mean those offices which are filled by popular election (or appointment in the case of vacancy in office).[6]
Under this interpretation of the term, the municipal judgeship currently held by Mr. Howard would appear to be a "political office" within the context of A.C.A. 14-51-202 since the office, although currently filled by the appointment or employment of Mr. Howard, is presumably an elective office. Thus, the statute would appear to prohibit Mr. Howard's appointment to the Newport Civil Service Commission. It should be emphasized, however, that a conclusive determination with respect to what offices are encompassed within the term "political office" can come only from the legislature or judiciary.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Nancy A. Hall.
Sincerely, WINSTON BRYANT Attorney General
WB:cyh
[1] Arkansas Code Annotated 16-17-105(a) (Repl. 1994), the provision under which it is indicated Mr. Howard serves as Tuckerman Municipal Judge, provides that when there is a vacancy in the office of municipal judge by virtue of the failure of any qualified attorney to be elected or by reason of the absence of a qualified attorney residing within the jurisdictional limits of the court, the governing body of the city may employ as judge either an attorney within the county who meets the requisite qualifications or the municipal judge of another municipal court in the county. Arkansas Code Annotated 16-18-112(b) (Repl. 1994), the provision under which it is indicated Mr. Howard serves as Swifton City Judge, provides that any mayor of any second class city or incorporated town may designate, at such times as he shall choose to do so, any qualified elector of the city or town or any attorney licensed in the State of Arkansas who resides in the county in which the city or town is situated to sit in the mayor's stead as judge of the city court; persons so designated shall receive such remuneration as the governing body of the city or town provides.
[2] As Mr. Montgomery's question references A.C.A.14-51-202(b)(1) (2), I assume that the Newport Civil Service Commission was established pursuant to A.C.A. 14-51-101 et seq., which authorizes cities of the first class to establish a civil service commission for their police and fire departments.
[3] In 1993 the General Assembly amended this Code section by inserting the word "political" before the word "organization." See Acts 1993, No. 206, 3.
[4] See, e.g., A.C.A. 14-49-202 (1987), which applies to civil service commissions (for certain city employees other than police and fire department personnel) in cities with a population of 75,000 or more and provides:
 (a) No person on the [civil service] commission shall hold or be a candidate for any office or public trust under any national, state, county, or municipal government, or school district, or be connected in any way in any official capacity with any political party or organization.
 (b) No person as enumerated in this section shall be eligible for a place on the [civil service] board who, at the time of his election, shall hold any such office. [Emphasis added.]
[5] In Op. Att'y Gen. No. 92-352, it was also stated that, to the extent A.C.A. 16-17-105 authorizes the employment or appointment of one who is not a "qualified elector" (i.e., a resident of the political subdivision to be served by the official), the statute is constitutionally suspect under Article 19, Section 3 of the Arkansas Constitution.
[6] See generally State ex rel. Gonzales v. Manzagol, 87 N.M. 230,531 P.2d 1203 (1975) (holding that office of city councilman, which classified state employee sought not as a nominee of a generally recognized continuing political party but as a member of an organized slate of candidates which adopted a name, platform and solicited funds to support election of state, was a "political office" within a statute prohibiting classified personnel from holding political office); Op. Att'y Gen. No. 89-219 (citing Simmons and stating that while it may be successfully contended that an elective position on a local community college board constitutes a "political" office for purposes of A.C.A. 14-51-202(b),14-51-202(b) would not be applicable in the scenario at issue since the office was a district office and thus not an office "under any national, state, county, or municipal government," as referred to in A.C.A. 14-51-202).